**CLERKS OFFICE US DISTRICT COURT
AT ROANOKE, VA
FILED**

March 23, 2026

**LAURA A. AUSTIN, CLERK
BY: /s/ M. Poff
DEPUTY CLERK**

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| MICHAEL PAUL ADDISON, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 7:25-cv-00060 |
| | ) | |
| v. | ) | **MEMORANDUM OPINION** |
| | ) | |
| SGT. W.H. GILL and C/O HALE, | ) | By:   Hon. Thomas T. Cullen |
| | ) | United States District Judge |
| Defendants. | ) | |

Plaintiff Michael Paul Addison, proceeding *pro se*, filed this action under 42 U.S.C. § 1983 against Defendants Sgt. W.H. Gill and C/O Hale. (*See generally* Compl. [ECF No. 1].) He alleges that Gill wrongfully accused him of threatening Gill, leading to his being sprayed multiple times with chemical gas and placed in a strip cell. (*Id.* at 3–4.) He further alleges that Hale was present for Gill's false accusation but did not intervene. (*Id.*)

Now before the court are Defendant Hale's motion to dismiss (ECF No. 14), Plaintiff's motion for default judgment as to Defendant Gill (ECF No. 24), Defendant Gill's motion for extension of time to respond to Plaintiff's complaint (ECF No. 28), Defendant Gill's motion to dismiss (ECF No. 26), and Plaintiff's motion to amend his complaint and for an extension of time to do so (ECF No. 40). For the following reasons, Defendant Hale's motion to dismiss will be granted, Plaintiff's motion for default judgment as to Defendant Gill will be denied, Defendant Gill's motion for extension of time to respond to Plaintiff's complaint will be granted, Plaintiff's motion to amend his complaint will be granted in part, and the court will reserve ruling on Defendant Gill's motion to dismiss.

## BACKGROUND

Plaintiff's allegations stem from a March 14, 2023 encounter with Sgt. Gill and C/O Hale at Wallens Ridge State Prison. Plaintiff alleges that, around 7:30 a.m., Gill asked him to step into the sally port. After he did so, Gill told him to turn around and place his hands behind his back to be handcuffed. Plaintiff complied with the order but asked Gill why he was being cuffed. Gill responded that it was "for threatening me," to which Plaintiff replied, "That's a lie." Plaintiff also asked Gill why his body-worn camera was not on. Plaintiff was then escorted to the shower area to be searched, but he refused to remove his clothes. He asked Gill if he could speak to the lieutenant, and Gill radioed Lt. Kimberlin, who came to the shower area and asked Plaintiff to undress. Plaintiff again refused but presented himself for restraint. He stated that he was not refusing restraint but was refusing to remove his clothes because Gill had lied about Plaintiff threatening him. Kimberlin and Gill then sprayed Plaintiff three times with gas in the shower area, all while Plaintiff had his hands behind his back. Plaintiff was then sprayed again with the crowd-control canister in the shower, still with his back turned and his hands behind his back waiting to be restrained. Next, Plaintiff was restrained and brought to cell D137. (Compl. at 3–4.)

Plaintiff kicked the door of the cell, and Kimberlin told him he was "going on strip cell." (*Id.*) Plaintiff protested, claiming he had done nothing to warrant strip-cell status. Following Plaintiff's protest, Gill gassed him again with the crowd-control canister. The officers then restrained Plaintiff and brought him to cell D116. Plaintiff alleges that, although he had stripped down to his boxer shorts, the officers failed to provide a mattress, smock, or blanket. When Plaintiff rattled the tray slot in the strip cell, he was placed in ambulatory

restraints. He remained in these restraints from roughly 9:00 a.m. on March 14, 2023, until 1:00 p.m. on March 15, 2023. (Compl. at 3–4.)

The next day, March 16, Gill came to the strip cell while Plaintiff was on a recorded phone call with his mother. Gill then admitted to fabricating the charge that Plaintiff had threatened him, an admission Plaintiff claims was captured on the phone call recording. (Compl. at 3–4.)

Hale was present at the time Gill claimed Plaintiff had threatened him but nevertheless "went along with" Gill's accusation. (Compl. at 4.)

Hale responded to Plaintiff's complaint by filing a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). (*See* Hale's Mot. to Dismiss [ECF No. 14].) Although Gill was served with a copy of the summons and complaint, he failed to respond to the complaint within 21 days. (*See* Summons Returned Executed [ECF No. 21].) After Gill failed to file a responsive pleading, the court ordered Plaintiff to show cause as to why he had not yet sought a clerk's entry of default or moved for default judgment under Rule 55. (*See* Order to Show Cause [ECF No. 23].) Following the court's order, Plaintiff moved for default judgment against Gill. (*See* Pl.'s Mot. for D.J. [ECF No. 24].)

The day after Plaintiff filed his motion for default judgment, Gill filed a motion to dismiss (Gill's Mot. to Dismiss [ECF No. 26]) and a response in opposition to Plaintiff's motion for default judgment, which included a motion for extension of time to file a responsive pleading (Gill's Resp. in Opp'n to Pl.'s Mot. for D.J. [ECF No. 28].) After being granted several extensions, Plaintiff responded to Gill's motion to dismiss on March 13, 2026. (Pl.'s Resp. in Opp'n to Gill's Mot. to Dismiss [ECF No. 38].) The same day, Plaintiff moved

to amend his complaint under Federal Rule of Civil Procedure 15(a). (Pl.'s Mot. to Am. [ECF No. 40].) Both Defendants opposed Plaintiff's motion to amend. (*See* Hale's Resp. in Opp'n to Pl.'s Mot. to Am. [ECF No. 41]; Gill's Resp. in Opp'n to Pl.'s Mot. to Am. [ECF No. 42].) Now, both motions to dismiss, Plaintiff's motion for default judgment, Gill's motion for extension of time to respond to Plaintiff's complaint, and Plaintiff's motion to amend are ripe for review.

## MOTION FOR DEFAULT JUDGMENT

Under Federal Rule of Civil Procedure 55, "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defendant, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Fed. R. Civ. P. 55(a). The plaintiff must first move for a clerk's entry of default under Rule 55(a), which "provides notice to the defaulting party prior to the entry of default judgment by the court," before moving for a default judgment under Rule 55(b). *Shelton v. Marshall*, 724 F. Supp. 3d 532, 540 (W.D. Va. 2024) (quoting *Hummel v. Hall*, 868 F. Supp. 2d 543, 547 (W.D. Va. 2012)).

Once default has been entered, "[t]he defendant, by his default, admits the plaintiff's well-pleaded allegations of fact[.]" *Ryan v. Homecomings Fin. Network*, 253 F.3d 778, 780 (4th Cir. 2001) (citations omitted). The court must then determine whether the well-pleaded allegations in the complaint support the relief sought. *Id.* (citations omitted); *Worsham v. Travel Options, Inc.*, 678 F. App'x 165 (4th Cir. 2017) ("[A] defendant's default does not in itself warrant the court in entering a default judgment. There must be a sufficient basis in the pleadings for the judgment entered." (quoting *DIRECTV, Inc. v. Pernites*, 200 F. App'x 257, 258 (4th Cir. 2006))).

Plaintiff did not apply for a clerk's entry of default under Rule 55(a) before moving for default judgment under Rule 55(b). Courts within this circuit have found that failing to first seek a clerk's entry of default is a sufficient procedural basis to deny a motion for default judgment. *See, e.g.*, *Worthington v. Rice*, No. 3:16-CV-61, 2016 WL 9331275, at *1 (N.D.W. Va. Aug. 19, 2016) (denying motion for default judgment without prejudice because plaintiff failed to apply for entry of default before moving for default judgment); *Green v. Sanchez*, No. 2:21-CV-01376-RMG, 2022 WL 2785848, at *1 (D.S.C. June 22, 2022) (denying plaintiff's motion for default judgment as premature "because a default has not been entered pursuant to Fed. R. Civ. P. 55(a)"); *see also Eagle Fire, Inc. v. Eagle Integrated Controls, Inc.,* No. 3:06cv264, 2006 WL 1720681, at *5 (E.D. Va. June 20, 2006) ("Before the plaintiff can move for default judgment, the clerk or the court must enter default." (citing Fed. R. Civ. P. 55)). Consistent with these cases, the court finds that Plaintiff's failure to first seek an entry of default from the clerk provides sufficient grounds to deny his motion for default judgment.

Even if Plaintiff had first obtained a clerk's entry of default, Rule 55(c) authorizes the court to set aside the entry of default "for good cause." Fed. R. Civ. P. 55(c); *see also Colleton Preparatory Acad., Inc. v. Hoover Universal, Inc.*, 616 F.3d 413, 417 (4th Cir. 2010) (noting that whether to set aside an entry of default is a matter of the district court's discretion). Here, as the court discusses below, Gill has shown his failure to timely respond to Plaintiff's complaint was due to excusable neglect. Given the procedural defect with Plaintiff's motion, Gill's reasonable efforts to defend this action, and the Fourth Circuit's "strong preference that, as a general matter, defaults be avoided and that claims and defenses be disposed of on their

- 5 -

merits," *Colleton Prep.*, 616 F.3d at 417, the court will **DENY** Plaintiff's motion for default judgment against Defendant Gill (ECF No. 24).

## MOTION FOR EXTENSION OF TIME TO RESPOND

Gill's response to Plaintiff's motion for default judgment also contains a motion for extension of time to file his responsive pleading. (*See* Gill's Resp. in Opp'n to Pl.'s Mot. for D.J.) Under Federal Rule of Civil Procedure 6, "[w]hen an act may or must be done within a specified time, the court may, for good cause, extend the time . . . on motion made after the time has expired if the party failed to act because of excusable neglect." Fed. R. Civ. P. 6(b)(1)(B). "'Excusable neglect' is an 'elastic concept,' that is 'at bottom an equitable one, taking account of all relevant circumstances surrounding the party's omission.'" *Smith v. Montalvan*, 723 F. Supp. 3d 454, 462–63 (E.D. Va. 2024) (quoting *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 392, 395 (1993)) The term "neglect" encompasses "late filings caused by inadvertence, mistake, or carelessness, as well as by intervening circumstances beyond the party's control." *Pioneer*, 507 U.S. at 388. In determining whether the party's neglect was "excusable," the court considers such factors as: (1) "the danger of prejudice to the [non-movant]," (2) "the length of delay and its potential impact on judicial proceedings," (3) "the reason for the delay, including whether it was within the reasonable control of the movant," and (4) "whether the movant acted in good faith." *Id.* at 395.

In support of his motion, Gill states that, at the time Plaintiff filed this action, Gill was employed by the Virginia Department of Corrections ("VDOC") but was in the process of retiring. (Gill's Resp. in Opp'n to Pl.'s Mot. for D.J. ¶¶ 1–2.) After Plaintiff filed his complaint, but before Gill was served, Gill retried from his position. (*Id.* ¶ 2.) Because Gill was not

employed by VDOC at the time the Office of the Attorney General ("OAG") received the request for waiver of service, the OAG declined to accept service on Gill's behalf. (*Id.* ¶ 3.) The OAG did, however, provide the court with Gill's last known address. (*See id.* ¶ 4; ECF Nos. 11, 12.)

On May 9, 2025, the court directed the clerk to attempt to serve Gill via the U.S. Marshals service and issued a summons for his service. (*See* ECF Nos. 19, 20.) Defendant Gill was served on May 22, 2025 and he was required to respond to the complaint by June 12, 2025. (*See* ECF No. 21.) After he was served, Gill promptly contacted VDOC, who told him to get in touch with the OAG. (Gill's Resp. in Opp'n to Pl.'s Mot. for D.J. ¶ 7.) Gill asked the OAG to provide him with representation. (*Id.* ¶ 8.)

On June 9, 2025, the OAG sent a letter to the Governor's office certifying that there was a conflict of interest that precluded their representation of Gill. (*Id.* ¶ 10.) The Governor's office sent a response letter on June 25, 2025, certifying the conflict and authorizing the employment of special counsel to represent Gill. (*Id.* ¶ 11.) On July 9, 2025, the Division of Risk Management for the Commonwealth of Virginia sent a letter to Gill's now counsel requesting that he represent Gill in this matter. (*Id.* ¶ 13.) Counsel received the letter when he returned from vacation on July 14, 2025, and accepted the appointment and contacted Gill that day. (*Id.* ¶¶ 14–16.)

On July 17, 2025, Plaintiff filed his motion for default judgment (ECF No. 24). The next day, Gill met with counsel to prepare a responsive pleading. (Gill's Resp. in Opp'n to Pl.'s Mot. for Def. J. ¶ 18.) Gill submitted his motion to dismiss and response in opposition to Plaintiff's motion for default judgment on July 18, 2025. (*See id.*; Gill's Mot. to Dismiss.) He

- 7 -

represents that he followed the proper procedure with the OAG, the Governor's office, and the Division of Risk Management, yet counsel was not retained, through no fault of Gill or his counsel, until after the responsive-pleading deadline had expired. (Gill's Resp. in Opp'n to Pl.'s Mot. for D.J. ¶ 20.)

The court finds that Gill's failure to timely respond to the complaint was the result of excusable neglect—namely, that his late filing was caused by inadvertence and intervening circumstances beyond his control. *See Pioneer*, 507 U.S. at 388. And, considering all the relevant circumstances, that neglect appears excusable. *See id.* at 395. The reason for delay was his pursuit of appointed counsel, to which he was apparently entitled. Further, the length of the delay was not so long as to significantly impact the entire case or prejudice Plaintiff. Because Hale had already filed a motion to dismiss and discovery had not yet commenced at the time Gill responded to the complaint, granting the motion for extension will not disrupt the other proceedings in this case. Finally, the court sees no indication that Gill or his counsel acted in bad faith by failing to respond to the complaint until July 18, 2025. Therefore, the court will grant Gill's motion for extension of time (ECF No. 28) and consider his motion to dismiss timely filed.

## MOTION TO AMEND

Federal Rule of Civil Procedure 15 governs the amendment of pleadings. Under that rule, a party may amend its pleading once "as a matter of course" within 21 days of service of the original pleading or 21 days of service of a responsive pleading or Rule 12 motion. *See* Fed. R. Civ. P. 15(a)(1). Otherwise, "a party may amend its pleading only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). Rule 15 instructs courts to "freely

- 8 -

give leave when justice so requires." *Id.* It is therefore the policy in this Circuit to "liberally allow amendment" and, when possible, to "resolv[e] cases on the merits, instead of on technicalities." *U.S. ex rel. Nicholson v. MedCom Carolinas, Inc.*, 42 F.4th 185, 197 (4th Cir. 2022) (citations omitted). Nevertheless, the court should deny leave to amend "when the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would be futile." *ACA Fin. Guar. Corp. v. City of Buena Vista*, 917 F.3d 206, 217–18 (4th Cir. 2019).

On March 13, 2026, after filing responses to both motions to dismiss, Plaintiff filed a motion to amend, seeking to file an amended complaint and asking for an extension of time to do so on the basis that there is no institutional lawyer at his facility and he has had limited access to the law library while the prison has been in lockdown. (Pl.'s Mot. to Am. 1.) Plaintiff did not attach a proposed amended complaint to his motion.

Defendants have both responded in opposition to Plaintiff's motion to amend. (*See* Hale's Resp. in Opp'n to Pl.'s Mot. to Am. [ECF No. 41]; Gill's Resp. in Opp'n to Pl.'s Mot. to Am. [ECF No. 42].) In his opposition brief, Hale references the fact that he filed his motion to dismiss in April 2025 and Plaintiff never responded to that motion. (*See* Hale's Resp. in Opp'n to Pl.'s Mot. to Am. 2.) Defendants also cite the fact that Plaintiff was granted several extensions of time to file a response to Gill's motion to dismiss and, at no point until after he had been granted additional months and filed his response brief did Plaintiff raise the issue of amendment. (*Id.*; *see also* Gill's Resp. in Opp'n to Pl.'s Mot. to Am. 1 (joining Hale's arguments).)

Upon review of the record, including Plaintiff's allegations, his failure to respond to Hale's motion to dismiss or request an extension of time to do so, and the significant delay between Plaintiff's deadline to respond to Hale's motion to dismiss and the filing of Plaintiff's motion to amend, the court finds that Defendant Hale would be prejudiced if the court allowed Plaintiff to amend before the court rules on Hale's motion to dismiss. Hale's motion has been ripe for several months and would have been decided earlier had there not been delays in receiving a responsive pleading from Gill or Plaintiff's opposition to Gill's motion. Moreover, Plaintiff has made relatively few allegations against Hale in the action (*see* Compl. at 4) and has made little effort to prosecute his claim against Hale compared to those against Gill. For these reasons and because of the undue delay and apparent prejudice to Hale, the court will not allow Plaintiff to amend his complaint before ruling on Hale's motion to dismiss.

But the court's analysis differs regarding Gill's motion to dismiss. By order of the court, Plaintiff had until March 9, 2026, to respond to Gill's motion to dismiss. (*See* Order, Feb. 9, 2026 [ECF No. 37].) Plaintiff ultimately filed his response opposing Gill's motion on March 13, 2026, and filed his motion to amend the same day. (*See* Pl.'s Resp. in Opp'n to Gill's Mot. to Dismiss; Pl.'s Mot. to Am.) The facts that Plaintiff's motion to amend was filed simultaneously with his response and that he sought multiple extensions of time to oppose Gill's motion undercuts any argument of undue delay or prejudice as to Gill. And given the numerous factual allegations against Gill in Plaintiff's current complaint—including that Plaintiff was gassed several times by Gill and/or in Gill's presence and moved to a strip cell based on Gill's false accusation, all while Plaintiff was neither violent nor belligerent—the court cannot say with any certainty that amendment would be futile. Accordingly, the court

finds it is in the interests of justice to grant Plaintiff's motion to amend in part and allow him

leave to file an amended complaint before ruling on Gill's motion to dismiss.

## DEFENDANT HALE'S MOTION TO DISMISS

A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint. *Occupy Columbia v. Haley*, 738 F.3d 107, 116 (4th Cir. 2013). To survive such a motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). To be "plausible," a plaintiff's claim must be supported by factual allegations sufficient to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Although this "plausibility" standard is not akin to "probability," it does require "more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). Instead, the complaint must contain "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

"In deciding whether a complaint will survive a motion to dismiss, a court evaluates the complaint in its entirety, as well as documents attached or incorporated into the complaint." *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 448 (4th Cir. 2011) (citations omitted). Additionally, the court "must accept as true all of the factual allegations contained in the complaint and draw all reasonable inferences in favor of the plaintiff." *Hall v. DIRECTV, LLC*, 846 F.3d 757, 765 (4th Cir. 2017) (citations omitted). "But where the well-

pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not shown—that the pleader is entitled to relief' as required by Rule 8." *Iqbal*, 556 U.S. at 679 (cleaned up).

Plaintiff's claims in this case arise under 42 U.S.C. § 1983, which authorizes a civil action by a citizen who is deprived of "any rights, privileges, or immunities secured by the Constitution and laws" of the United States by a person acting under color of state law. To state a claim under § 1983, a plaintiff must allege both (1) "the violation of a right secured by the Constitution and laws of the United States" and (2) "that the alleged deprivation was committed by a person acting under color of state law." *Crosby v. City of Gastonia*, 635 F.3d 634, 639 (4th Cir. 2011) (quoting *West v. Atkins,* 487 U.S. 42, 48 (1988)).

Plaintiff claims that Defendant Hale violated his Eighth and Fourteenth Amendment rights by "willingly and knowingly allowing [Gill] to fabricate an entire incident that falsely accused Plaintiff" and resulted in his rights being violated by other officers. (Compl. at 4.) Plaintiff does not allege that Hale used excessive force against him or his placed in a strip cell, but rather that he was merely present for, but failed to correct, Gill's false accusation that Plaintiff had threatened him. (*Id.*) The court liberally construes Plaintiff's complaint as asserting § 1983 claims for failure to intervene under the Eighth Amendment.[1]

---

[1] Although Plaintiff apparently attempts to assert failure-to-protect and failure-to-intervene claims under the Fourteenth Amendment as well, because Plaintiff was a convicted prisoner, not a pretrial detainee, at the time of the events described in the complaint, the Eighth Amendment lends the proper standard. *See, e.g., Bowman v. Ozmint*, No. 0:08-2517-PMD-PJG, 2009 WL 3065180, at *12 (D.S.C. Sept. 22, 2009), *aff'd*, 369 F. App'x 416 (4th Cir. 2010) ("[A]s [Plaintiff] is a state prisoner and not a pre-trial detainee, his allegations of deliberate indifference and failure to protect implicate the Eighth Amendment's proscription against cruel and unusual punishment . . . not the Fourteenth Amendment's requirement of due process.").

The Fourth Circuit recognizes a cause of action for failure to intervene—also frequently referred to as "bystander liability"—"premised on a law officer's duty to uphold the law and protect the public from illegal acts, regardless of who commits them." *Stevenson v. City of Seat Pleasant, Md.*, 743 F.3d 411, 416–17 (4th Cir. 2014) (quoting *Randall v. Prince George's Cnty.*, 302 F.3d 188, 203 (4th Cir. 2002)). To state claim based on bystander liability, a plaintiff must allege that the officer "(1) knew that a fellow officer was violating [his] constitutional rights; (2) had a reasonable opportunity to prevent the harm; and (3) chose not to act." *Id.* at 417 (cleaned up). Where there is no underlying constitutional violation, there can be no liability based on a bystander's failure to intervene. *See Shafer v. Toman*, No. 5:21-CV-00014, 2022 WL 4134774, at *5 (W.D. Va. Sept. 12, 2022) (citing *Randall*, 302 F.3d at 203).

Any claim that Hale is liable as a bystander fails because Plaintiff has not alleged sufficient facts to show that Hale knew Gill was violating Plaintiff's constitutional rights or that Hale could have reasonably prevented the subsequent harm. Plaintiff alleges that Hale was present "at the time of [the] false accusation made by Sgt. Gill" and that Gill admitted the allegations was false two days later. (Compl. 4.) But Plaintiff does not allege facts which would allow the court to infer that Hale knew Gill's statement was false *at the time it was made*. Plaintiff seems to assume, without offering a sufficient factual basis, that, because Gill's statement was false, Hale should have known it was false. But to survive Hale's motion to dismiss under Rule 12(b)(6), the factual allegations in Plaintiff's complaint must be more than consistent with the possibility that Hale acted unlawfully. *Iqbal*, 556 U.S. at 678. Further, although Plaintiff alleges that Gill "could've spoken up and stopped these violations by just telling the truth," Plaintiff's own allegations suggest that the subsequent actions taken against him—namely, the gassing

- 13 -

and placement in a strip cell—were motivated by Plaintiff's refusal to remove his clothing and not Gill's accusation. (*See id.* at 3.) Simply put, Plaintiff's factual allegations against Hale do not raise his right to relief "above the speculative level." *Twombly*, 550 U.S. at 555. He has therefore failed to state a claim based on Hale's failure to intervene.

Because Plaintiff has not stated any plausible claim against Hale, the court will grant Hale's motion to dismiss (ECF No. 14) and dismiss Plaintiff's claims against Hale for failure to state a claim.

## IV.

For the reasons set forth above, Defendant Hale's motion to dismiss (ECF No. 14) will be granted, Plaintiff's motion for default judgment as to Defendant Gill (ECF No. 24) will be denied, Defendant Gill's motion for extension of time to respond to Plaintiff's complaint (ECF No. 28) will be granted, and Plaintiff's motion to amend his complaint (ECF No. 40) will be granted in part. The court will reserve ruling on Defendant Gill's motion to dismiss (ECF No. 26) until Plaintiff files his amended complaint. If Plaintiff timely files an amended complaint, the court will deny Gill's motion to dismiss, without prejudice, as moot, and Gill will be free to raise any of the same arguments in his response to the amended complaint. If Plaintiff does not timely file an amended complaint as ordered, however, the court will rule on Gill's motion to dismiss the current complaint.

- 14 -

The Clerk is directed to send a copy of this Memorandum Opinion and the accompanying Order to the parties.

**ENTERED** this 23rd day of March, 2026.

/s/ Thomas T. Cullen
HON. THOMAS T. CULLEN
UNITED STATES DISTRICT JUDGE