IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

**CLERKS OFFICE US DISTRICT COURT
AT ROANOKE, VA
FILED**

July 08, 2026

**LAURA A. AUSTIN, CLERK
BY: /s/ M. Poff
DEPUTY CLERK**

| | | |
|---|---|---|
| MICHAEL PAUL ADDISON, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 7:25-cv-00060 |
| | ) | |
| v. | ) | **MEMORANDUM OPINION** |
| | ) | |
| SGT. W.H. GILL, | ) | By:   Hon. Thomas T. Cullen |
| | ) | United States District Judge |
| Defendant. | ) | |

Plaintiff Michael Paul Addison, a Virginia inmate proceeding *pro se*, filed this action

under 42 U.S.C. § 1983, asserting various claims based on alleged violations of his

constitutional rights. (*See* Compl. [ECF No. 1].) This matter is before the court on Defendant

Sgt. W.H. Gill's motion to dismiss.[1] (ECF No. 26). For the following reasons, the court will

grant the motion to dismiss in part and deny it in part.

## I.   BACKGROUND

This matter stems from events that allegedly occurred while Addison was incarcerated

at the Wallens Ridge State Prison (the "prison") in Big Stone Gap, Virginia.[2] (*See* Compl. at 1.)

---

[1] By Order entered March 23, 2026, the court took Gill's motion to dismiss under advisement and gave Addison leave to file an amended complaint within 30 days. (ECF No. 44.) The court further notified Addison that if he did not file an amended complaint within 30 days, his current complaint would remain the operative pleading and the court would rule on Gill's motion to dismiss without awarding any further extensions. (*Id.*) As of this date, Addison has not filed an amended complaint. Instead, he filed a handwritten letter to the Clerk asking that she "direct [him] on [his] next action" as he has "absolutely no idea of how to proceed with [his] case." (ECF No. 47 at 1.) Addison further states that his alleged "facts are merit enough to allow this case to proceed to trial" and asks that the Clerk and/or the court "allow the facts to determine the decision to proceed and not [Addison's] lack of legal knowledge." (*Id.* at 1–2.) Based on Addison's letter and the expiration of the 30-day period for filing an amended complaint, the court understands that Addison will not be filing an amended pleading. To the extent Addison requests assistance from the court in preparing an amended complaint, that request is denied. *See Pliler v. Ford*, 542 U.S. 225, 231 (2004) ("District judges have no obligation to act as counsel or paralegal to *pro se* litigants"). With these issues addressed, the court will consider Gill's motion to dismiss.

[2] In addition to Gill, Addison initially sued C/O Hale. (*See* Compl.) But his claims against Hale have been dismissed. (*See* ECF No. 44.) Accordingly, the court will only summarize Addison's complaint and this case's procedural history to the extent necessary to address Addison's claims against Gill.

Gill is a correctional officer at the prison holding the rank of sergeant. (*See id.*) Addison makes the following factual allegations in his complaint, which the court accepts as true when analyzing the motion to dismiss. *In re Birmingham*, 846 F.3d 88, 92 (4th Cir. 2017).

Addison alleges that on March 14, 2023, at around 7:30 a.m., Gill asked him to step into the "sally port." (Compl. at 3.) After Addison did so, Gill told him to turn around and place his hands behind his back to be handcuffed. (*Id.*) Addison complied with the order but asked Gill why he was being cuffed. (*Id.*) Gill responded that it was because Addison had "threatened" Gill; Addison replied, "That's a lie." (*Id.*) Addison also asked Gill why his body-worn camera was not on. (*Id.*) Addison alleges that Gill eventually turned on his body-worn camera after Addison repeatedly requested that he do so. (*Id.*)

According to Addison, he was then escorted to the shower area to be strip searched, but once there, he refused to remove his clothes. (*Id.*) Addison asked Gill if he could speak to the lieutenant, and Gill then radioed Lt. Kimberlin, who came to the shower area and asked Addison to undress.[3] (*Id.*) Addison again refused but presented himself for restraint. (*Id.*). He stated that he was not refusing restraint but was refusing to remove his clothes because Gill had lied about Addison threatening him. (*Id.*) Kimberlin and Gill then sprayed Addison with chemical agents three times in the shower area, all while Addison had his hands behind his back. (*Id.*) Addison was sprayed again with a crowd-control canister in the shower—again, while his hands were behind his back and he was waiting to be restrained. (*Id.*)

Addison was then restrained and brought to his cell. (*Id.*) After Addison kicked his cell door, Kimberlin told Addison that he was "going on strip cell." (*Id.*) Addison protested,

---

[3] Addison did not name Kimberlin as a Defendant. (*See* Compl.).

- 2 -

claiming he had not done anything to warrant strip-cell status. (*Id.*) In response to Addison's protest, Gill again sprayed Addison with the crowd-control canister. (*Id.*) The officers then restrained Addison and took him to a different cell. (*Id.*) Addison alleges that, although he had stripped down to his boxer shorts, the officers failed to provide a mattress, smock, or security blanket (*Id.*) When Addison later rattled the tray slot in the strip cell, he was placed in ambulatory restraints. (*Id.*) He remained in those restraints from roughly 9:00 a.m. on March 14, 2023, until 1:00 p.m. on March 15, 2023. (*Id.*)

According to Addison, on March 16, Gill came to the strip cell while Addison was on a recorded phone call with his mother. (*Id.*) Addison claims that Gill then admitted to fabricating the charge that Addison had threatened him, an admission Addison claims was captured on the phone-call recording. (*Id.*)

On January 11, 2025, Addison executed his complaint (*id.* at 2) which is the operative pleading. Addison seeks monetary damages as well as declaratory relief. (*Id.* at 2, 5.)

On July 18, 2025, Gill filed his motion to dismiss. (ECF No. 26.) Addison filed a response in opposition (ECF No. 38), Gill did not file a reply, and the motion to dismiss is ripe for disposition.

## II.    STANDARD OF REVIEW

Motions to dismiss under Rule 12(b)(6) test the legal sufficiency of a complaint. *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). To survive a Rule 12(b)(6) motion, the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when the plaintiff's allegations "allow[] the court to draw the reasonable inference that the defendant is liable for

the misconduct alleged." *Id.* While a complaint does not need "detailed factual allegations," complaints merely offering "labels and conclusions," "'naked assertion[s]' devoid of 'further factual enhancement,'" or "a formulaic recitation of the elements of a cause of action will not do." *Id.* (alteration in original) (quoting *Twombly*, 550 U.S. at 555, 557). At bottom, the court "must accept all well-pleaded allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor." *Langford v. Joyner*, 62 F.4th 122, 124 (4th Cir. 2023).

Pleadings filed by *pro se* litigants must be construed liberally. *King v. Rubenstein*, 825 F.3d 206, 214 (4th Cir. 2016). "Principles requiring generous construction of *pro se* complaints are not, however, without limits." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985). A *pro se* complaint must still "state a claim to relief that is plausible on its face." *Jackson v. Lightsey*, 775 F.3d 170, 178 (4th Cir. 2014) (quoting *Iqbal*, 556 U.S. at 678).

### III.   ANALYSIS

Addison is pursuing his claims against Gill under 42 U.S.C. § 1983, a statute that permits an aggrieved party to file a civil action against a person for actions taken under color of state law that violated his rights under the Constitution or laws of the United States. *Cooper v. Sheehan*, 735 F.3d 153, 158 (4th Cir. 2013). Addison sues Gill in his individual and official capacities and asserts deliberate indifference to conditions-of-confinement and excessive-force claims under the Eighth and Fourteenth Amendments. (Compl. at 3.)

As an initial matter, although Addison cites both the Eighth and Fourteenth Amendments, his claims against Gill arise, if at all, under the Eighth Amendment. This is because Addison was a convicted prisoner and not a pretrial detainee when the events at issue occurred. *See Tarashuk v. Givens*, 53 F.4th 154, 163 (4th Cir. 2022).

## A. Official Capacity Claims

Addison sues Gill in his individual and official capacities and requests monetary damages as well as declaratory relief. (Compl. at 1–2, 5.) But Addison's official-capacity claims for monetary damages against Gill must be dismissed because, in his official capacity, he is not a "person" subject to suit under § 1983.[4] *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989); *see also Fauconier v. Clarke*, 966 F.3d 265, 279–80 (4th Cir. 2020) ("[N]either States nor state officials acting in their official capacities constitute 'persons' within the meaning of the statute when sued for monetary relief."). Accordingly, Addison's official capacity claim(s) for monetary damages against Gill must be dismissed.[5]

## B. Deliberate Indifference to Conditions of Confinement

Addison asserts a deliberate indifference to conditions of confinement claim against Gill. (*See* Compl. at 3.) Although Addison is less than clear on this point, the court understands this claim to be based on his placement in the strip cell and, later, the use of ambulatory restraints. (*See id.*)

It is well-established that the Eighth Amendment "protects inmates from inhumane treatment and conditions while imprisoned." *Williams v. Benjamin*, 77 F.3d 756, 761 (4th Cir. 1996). To state an Eighth Amendment conditions-of-confinement claim, prisoners must satisfy a two-part test. *Hammock v. Watts*, 146 F.4th 349, 360 (4th Cir. 2025). "First, they must show 'deprivation of a basic human need' that is 'objectively sufficiently serious.'" *Id.* (quoting *Rish v. Johnson*, 131 F.3d 1092, 1096 (4th Cir. 1997)). This requires showing "a serious or

---

[4] Gill does not address whether Addison's official capacity claims for monetary damages implicate the Eleventh Amendment (*see* ECF No. 27), and the court will not address the issue *sua sponte*.

[5] As discussed below, Addison's declaratory relief claim(s) against Gill will be dismissed for unrelated reasons.

significant physical or emotional injury resulting from the challenged conditions, or a substantial risk of serious harm resulting from the prisoner's unwilling exposure to the challenged conditions." *Id.* (quoting *Shakka v. Smith*, 71 F.3d 162, 166 (4th Cir. 1995)) (internal quotation marks omitted); *see also Helling v. McKinney*, 509 U.S. 25, 33 (1993) ("[A] condition of confinement that is sure or very likely to cause serious illness and needless suffering the next week or month or year" violates the Eighth Amendment even if "the complaining inmate shows no serious current symptoms."). Second, a prisoner "must establish that the defendant had a sufficiently culpable state of mind, which requires either actual knowledge of an excessive risk to the prisoner's safety or proof that prison officials were aware of facts from which an inference could be drawn that a substantial risk of serious harm exists and that the inference was actually drawn." *Hammock*, 146 F.4th at 360 (quoting *Farmer v. Brennan*, 511 U.S. 825, 834, 837 (1994)) (internal quotation marks omitted).

Gill contends that Addison's claim fails because he does not "allege that [] Gill placed him [in] either [the] strip cell or ambulatory restraints." (ECF No. 27 at 5–6.) But Gill's narrow focus on who restrained Addison is not dispositive of his conditions-of-confinement claim. For one, the complaint does not clearly allege that Gill did *not* place Addison in the strip cell and in ambulatory restraints. (*See* Compl. at 3 ("Once again[,] Sgt. Gill gassed me with [the] crowd control canister. I was again restrained and put in [the strip cell] with no mattress, no smock, no security blanket [and wearing] only my boxers. I rattled the tray slot and was then placed in ambulatory restraints arbitrarily from approx[imately] 9 am or so on 3/14/23 until 1 pm on 3/15/23. On 3/16/23[,] Sgt. Gill came to my door [at the strip cell.]")) Moreover, even if Gill did not place Addison in the strip cell and/or in ambulatory restraints, this—standing alone—does not defeat Addison's conditions-of-confinement claim. Addison's

- 6 -

allegations suggest that Gill, at the very least, knew that Addison was being held in the strip

cell without a mattress, smock, or security blanket and wearing only his boxers, and that

Addison was later placed in ambulatory restraints.[6] (*See id.*) A defendant's knowledge of the

complained-of conditions and failure to remedy them can, in some circumstances, be sufficient

to show a conditions-of-confinement claim. *See, e.g.*, *Cherry v. Ind. Dep't of Corrs.*, No. 3:22-cv-

00139, 2023 WL 1765417, at *1 (N.D. Ind. Feb. 2, 2023) ("[The plaintiff] has plausibly alleged

that the sanitation and temperature of his cell were constitutionally inadequate and that [the

defendants] were aware of the problems, ongoing as they were, but did not remedy them. He

may proceed on an Eighth Amendment claim against them."); *see also Brown v. Picknell*, No. 18-

cv-1653, 2019 WL 144382, at *2-3 (E.D. Wis. Jan. 9, 2019) ("Brown's allegation that he

complained to the defendants and that they did not fix the problems suggests that they

knowingly allowed the problems to persist . . . . Therefore, at this stage, Brown may proceed

on a claim that the defendants subjected him to unconstitutional conditions of confinement.").

As Gill's sole argument for dismissal is not dispositive, his motion to dismiss Addison's

conditions-of-confinement claim will be denied.

### C. Excessive Force

Addison asserts an excessive-force claim against Gill based on his use of chemical

agents on Addison. (*See* Compl. at 3.)

The Eighth Amendment protects prisoners from "cruel and unusual punishment" at

the hands of prison officials. *Wilson v. Seiter*, 501 U.S. 294, 296–97 (1991). This includes

---

[6] Although Gill generally outlines the legal framework for assessing a conditions-of-confinement claim (*see* ECF No. 27 at 6–8), he does not apply this framework to Addison's claims except to say that "consider[ation] [of] the facts as plead[ed] . . . [shows] that [the] claim should be dismissed." (*Id.* at 8.) And Gill does not squarely address whether Addison's complained-of conditions were sufficiently serious to meet the first prong of a conditions-of-confinement claim. (*See id.* at 5–8.) The court will not address these issues *sua sponte*.

punishments that "involve the unnecessary and wanton infliction of pain." *Gregg v. Georgia*, 428 U.S. 153, 173 (1976). An Eighth Amendment excessive-force claim "involves both an objective and a subjective component." *Dean v. Jones*, 984 F.3d 295, 302 (4th Cir. 2021); *Brooks v. Johnson*, 924 F.3d 104, 112 (4th Cir. 2019) (same). The objective component measures the nature of the force employed, asking whether that force was "sufficiently serious to establish a cause of action." *Brooks*, 924 F.3d at 112. This is not a high bar; "[s]o long as the force used is more than de minimis, the objective component is satisfied, regardless of the extent of the injury." *Dean*, 984 F.3d at 303; *Thompson v. Commonwealth of Va.*, 878 F.3d 89, 98 (4th Cir. 2017) ("[A] prisoner who suffers a minor, but malicious, injury may be able to prevail on an excessive force claim . . . .").

The subjective component requires the court to determine "whether the officers acted with a sufficiently culpable state of mind." *Dean*, 984 F.3d at 302 (internal quotation marks omitted). "The state of mind required here is wantonness in the infliction of pain." *Id.* (cleaned up); *see Iko v. Shreve*, 535 F.3d 225, 239 (4th Cir. 2008) (same). "Whether an inmate can establish that impermissible motive turns on 'whether force was applied in a good[-]faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm.'" *Dean*, 984 F.3d at 302 (quoting *Whitley v. Albers*, 475 U.S. 312, 320–21 (1986)). The Fourth Circuit has explained that "officers employ force in 'good faith'—and thus permissibly—when they are motivated by an 'immediate risk[] to physical safety' or threat to prison order." *Id.* (quoting *Brooks*, 924 F.3d at 113). But when an officer inflicts pain to punish or retaliate against an inmate for his prior conduct and not to protect safety or prison discipline, they cross the line into an impermissible and unconstitutional motive. *Brooks*, 924 F.3d at 113; *see Boone v. Stallings*, 583 F. App'x 174, 177 (4th Cir. 2014) (per curiam) ("[T]he

- 8 -

Eighth Amendment does not permit a correctional officer to respond to a misbehaving inmate in kind."). "And the use of force on an inmate who is 'restrained and compliant and posing no physical threat' raises the specter of such an impermissible motive." *Dean*, 984 F.3d at 302 (quoting *Thompson*, 878 F.3d at 102).

Because direct evidence of improper motive or intent is hard to come by, the Supreme Court has set out four factors—the so-called *Whitley* factors—from which a court "may infer the existence of the subjective state of mind required for an Eighth Amendment violation." *Brooks*, 924 F.3d at 116 (cleaned up) (quoting *Hope v. Pelzer*, 536 U.S. 730, 738 (2002)). Those factors are:

> (1) the need for the application of force; (2) the relationship between the need and the amount of force that was used; (3) the extent of any reasonably perceived threat that the application of force was intended to quell; and (4) any efforts made to temper the severity of a forceful response.

*Iko*, 535 F.3d at 239 (cleaned up) (quoting *Whitley*, 475 U.S. at 321).

Gill "concede[s]" that his use of chemical agents on Addison was "a sufficiently serious use of force" to establish the objective component of an excessive-force claim. (ECF No. 27 at 9); *see Gorham v. Barksdale*, No. 7:15-cv-00437, 2018 WL 1595628, at *8 (W.D. Va. Mar. 31, 2018) ("There is no question that [an officer's] use of OC spray on [the plaintiff] . . . constitutes more than a nontrivial use of force" to satisfy the objective component of an excessive force claim.) But he contests whether Addison can show the subjective component of such a claim. (*Id.* at 9–11.) In support, Gill notes that he only used chemical agents on Addison after he refused "to comply with [the] strip search." (*Id.* at 10.)

"It is widely recognized that prison guards may use chemical sprays when *reasonably necessary* to subdue an insubordinate prisoner because orders must be obeyed, and there are

- 9 -

only so many choices available to correctional officers when an inmate refuses." *Lewis v. White*, No. 1:07-cv-00348, 2010 WL 2671495, at *3 (S.D. W.Va. June 8, 2010) (collecting cases), *report and recommendation adopted*, 2010 WL 2671570 (S.D. W.Va. July 1, 2010) (emphasis added). That said, "[a]n inmate's passive disobedience, without more, does not in and of itself authorize unrestrained or extreme escalation of force." *Smith v. Kind*, 140 F.4th 359, 368 (7th Cir. 2025); *see also Treats v. Morgan*, 308 F.3d 868, 872–73 (8th Cir. 2002) ("Not every instance of inmate resistance justifies the use of force, and use of pepper spray will not be justified every time an inmate questions orders or seeks redress for an officer's actions.") (internal citation omitted).

Gill narrowly focuses on Addison's failure to submit to the strip search as a justification for his use of chemical agents on Addison. (*See* ECF No. 27 at 10–11.) But as noted, the mere fact that an inmate fails to comply with orders does not, by itself, justify the use of chemical agents. *See Smith*, 140 F.4th at 368; *see also Treats*, 308 F.3d at 872–73. Without more, the court cannot say that Addison has failed to show the subjective component of his excessive-force claim against Gill. Gill's sole argument for its dismissal is not dispositive, so Addison's excessive force claim must go forward.

### D. Declaratory Relief

As noted, Addison seeks both monetary damages and declaratory relief from Gill. (Compl. at 2, 5.) In support of his request for declaratory relief, Gill claims that he "has no plain, adequate, or complete remedy at law to redress the wrongs described" in his complaint.[7] (*Id.* at 5.) But Addison does not explain why his remedies at law are inadequate. Indeed, as Gill

---

[7] "To receive declaratory relief, a plaintiff must demonstrate the absence of an adequate remedy at law." *Faltas v. South Carolina*, No. 3:11-cv-03077, 2012 WL 988105, at *4 n. 3 (D.S.C. Jan. 27, 2012) (citing *Bolin v. Story*, 225 F.3d 1234, 1242 (11th Cir. 2000)).

notes, "a Section 1983 claim is clearly an adequate remedy at law." (ECF No. 27 at 11.)

Accordingly, Addison's claim for declaratory relief against Gill will be dismissed.

## IV.    CONCLUSION

For the reasons stated above, the court will grant Gill's motion to dismiss in part and deny it in part.

The Clerk is directed to forward a copy of this Memorandum Opinion and the accompanying Order to the parties.

**ENTERED** this 8th day of July, 2026.

/s/ Thomas T. Cullen
HON. THOMAS T. CULLEN
UNITED STATES DISTRICT JUDGE